UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
(DAVENPORT DIVISION)

| | |
|---|---|
| ELECTRONIC CONTROLLED SYSTEMS, INC. d/b/a KING CONTROLS,<br><br>    Plaintiff,<br><br>v.<br><br>WINEGARD COMPANY,<br><br>    Defendant. | **Consolidated Case No. 3:09-cv-138**<br><br>KING CONTROLS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY |
| WINEGARD COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>ELECTRONIC CONTROLLED SYSTEMS, INC. d/b/a KING CONTROLS,<br><br>    Defendant. | |

## INTRODUCTION

Winegard's claim on page 3 of its Resistance Brief that it has supplied documents to King Controls' in response to RFPs 4,6,11,13,14,15,18,26,27,32-35, and 37-39 is fantastic. If Winegard has done so, it forgot to send copies to counsel for King Controls. The only documents received by King Controls that appear to be responsive to a King Control RFP were received by Counsel via email on August 28, after the instant motion was filed. Those documents were partially responsive to RFP 12 and based on an agreement of counsel reached after the instant motion was filed. Other than those documents, Winegard has done nothing but drag its feet to

1

avoid responding to King Controls' discovery. The time line of events regarding the King Controls' RFPs is below. Winegard should be compelled to produce the documents requested in King Controls RFPs.

## TIMELINE OF RELEVANT EVENTS

April 26th: King Controls serves 43 RFPs on Winegard.

May 26th: Winegard serves objection and responses to RFPs, but no documents. (Exhibit A)

June 4th: King Controls arranges a meet and confer with Winegard regarding its discovery responses. Regarding the RFPs, Winegard states that it has only just received documents from its client and will endeavor to review and produce as soon as possible.

June 5th: King Controls sends Winegard an email summarizing their agreement on interrogatories and addressing and narrowing some issues regarding the RFPs. (Exhibit 1).

June 18th: King Controls sends an email to Winegard inquiring about document production (Exhibit 2).

June 22nd: King Controls sends another email inquiring about document production.(Exhibit 3).

June 25th: Winegard sends King Controls an email **stating document production will begin on July 2nd** and will be completed in 3 to 4 weeks. (Exhibit 4).

July 2nd: King Controls receives an email from Winegard stating that document production will be "slightly delayed" due to technical difficulties. (Exhibit 5).

July 6th: King Controls sends an email to Winegard asking when document production will start (Exhibit 6).

July 13th: King Controls receives an email from Winegard stating that they will not be providing damages discovery (Exhibit 7).

July 13th: King Controls complains to Winegard that they cannot unilaterally withhold discovery on damages. (Exhibit 8).

July 21st: King Controls receives an email in response to its *June 5th* email from Winegard stating new objections to document production (Exhibit 9).

July 21st: King Controls responds to the July 21 email from Winegard querying why it is receiving a response to its June 5th email a month and a half later, and asking for document production as promised to commence on July 2nd (Exhibit 10).

July 30th: In conjunction with the meet and confer regarding claim construction, counsel for King Controls asked counsel for Winegard about why it had not yet received any documents. Counsel for Winegard stated that they were working on it.

August 10th: Meet and confer between the parties regarding document production. Counsel for King Controls specifically asked whether the delay in production by Winegard was due to objections to production or other issues. Counsel for Winegard stated that they thought King Controls would be getting all the documents they asked for, but to date Counsel for Winegard had only been able to review about 5% of the documents.

August 12th: Based on Winegard's representation that there were no substantive issues regarding production, King Controls filed a motion, without brief, to compel production so that discovery in this matter could possibly be completed by the November 1st fact discovery deadline.

August 27th: Winegard sends an email to King Controls with a whole host of new objections to King Controls' RFPs. (Exhibit 11).

August 30th: Winegard files a 13 page brief with new objections to King Controls' RFPs and files a motion for protective order.

## ARGUMENT

King Controls argues that it is inappropriate to raise new objections to its RFP for the first time after King Controls filed the instant motion. Be that as it may, King Controls will attempt to address the arguments now raised by Winegard in its Resistance Brief.

Winegard's first new substantive objection is to its perceived overbroad nature of King Controls' RFP 12.

**RFP 12** asks for design documents regarding the accused Carryout and Minimax products. These documents are relevant to King Controls claim of willful infringement and to Winegard's defense that the King Controls' patents are invalid as obvious.[1] The design documents will likely show evidence that Winegard copied some of King Controls patented VuQube product (i.e. willfulness), and will also demonstrate that much engineering skill, know-how and time was required to make

---

[1] King Controls is not ignoring the fact that motions are pending to disallow Winegard the use of its Obviousness defense. King Controls is being prudent, however, as fact discovery will close November 1 and time will not allow for additional fact discovery if Winegard is ultimately allowed to assert its defense.

the accused products light enough to be hand transportable (i.e. non-obvious). The fact that there are a great deal of documents to produce regarding the design and development of the accused Carryout and Minimax products is highly relevant and shows the non-obvious nature of designing a light hand portable automatic satellite dish. Winegard should be required to produce everything it has.

Winegard next objects to RFPs 28-29.

**RFP 28** requests all prior art Winegard has relevant to the validity of the King Controls' patents. Winegard complains that they have already given King Controls all the prior art they have in the form of their reexamination requests. King Controls suggests that Winegard might supplement their response to RFP 28 so that King Controls might learn that the reexamination contains all such relevant prior art.

**RFP 29** asks for documents relevant to Winegard's due diligence after being notified of King Controls patent applications on June 5th, 2009. This RFP is relevant to King Controls claim of willful infringement by Winegard. To the extent Winegard has privileged documents, a privilege log should have been provided long ago. If the privilege log they have provided, consisting of two items, is the extent of their log, they should supplement their response to this RFP and so state. Winegard also throws in **RFPs 5, 30, 31 and 40** into section B of their brief, but does not discuss those requests in any detail. King Controls will not address those RFPs except to say they are not duplicative of RFPs 28 and 29 and Winegard should be required to produce documents responsive to them.

Winegard next objects to RFPs 14-16, 20, 21, 23, and 25.

**FRP 14** asks for general sales documents showing sales and sales amounts of all accused products. Winegard parades a list of horribles regarding the possible scope of this request, all the time

4

refusing to produce even the most basic responsive documents. Winegard could at least provide a copy of each invoice for each sale of an accused Carryout and Minimax product so that King Controls can determine if that information is sufficient. Winegard hasn't even done that, and should be compelled to do so.

**FRP 15** asks for manufacturing locations of Winegard accused products. This is relevant to damages. King Controls has already told Winegard that if they supplement this RFP by stating, as Winegard represented orally to King Controls, that all accused products are assembled in and sold from the United States, that would suffice as a response this RFP. Their complaint now is truly puzzling.

**RPF 16** asks for documents regarding the method they used to determine the price for the accused products. This request is relevant to damages and the 'hypothetical negotiation" under *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F.Supp. 1116 (S.D.N.Y. 1970), modified, 446 F.2d 295 (2nd Cir. 1970), cert. denied, 404 U.S. 870 (1971). Winegard most recently claims this information is a trade secret. However, back on May 26th, when their responses the these RFPs were due, Winegard stated in response to RFP 16: "Defendant objects to this request as it is overly broad and because the request is not limited to specific dates."(Exhibit A). As this is Winegard's only proper objection, and according to Winegard's brief these objections are no longer a concern, Winegard should be required to respond in full to this RFP.

**RFP 20** asks for sales projections regarding the accused products. This RFP is relevant both to the commercial success of the accused products as a defense to Winegard's obviousness claim, and to King Controls claim for damages. Winegard should be required to respond to this RFP in full.

**RFP 21** asks for documents showing the identification of Winegard's distributors of its accused products and sales numbers and revenue for each distributor. King Controls suggests that if

Winegard would provide a copy of the invoice showing the sale or distribution of each accused product, that might well suffice to answer both RFP 21 and RFP 14.

**RFP 23** asks for detailed marketing information. Winegard will undoubtedly argue at trial that the commercial success of the accused products is based on its marketing efforts, and not the patented aspect of the products. Marketing efforts are also evidence of "offers to sell" which are deemed an infringing activity under 35 U.S.C. 271. Thus King Controls is entitled to full discovery of Winegard's marketing efforts.

**RFP 25** asks for documents that identify the customers of the accused products. This is information relevant to King Controls inducement claim regarding the Minimax. Again, if Winegard were to provide the invoice for each sale of an accused product, the requested information for this RFP and RFP 21 and 14 would likely satisfy King Controls.

**RFP 9** is mentioned in the introduction section of Winegard's resistance brief. RFP 9 asks for documents that reflect written and oral communications between Winegard and King Controls. This would include, for example, emails from one Winegard employee to another Winegard employee regarding a conversation or communication with King Controls. If this document was generated on or after June 5th, 2009, the date King Controls notified Winegard of its pending patent application, it is relevant to Winegard's due diligence in attempting to avoid a finding of willful infringement. King Controls is entitled to all such documents, whether Winegard thinks King Controls has copies of them or not.

## CONCLUSION

Winegard's motion for a protective order should be denied. At the time of the filing of the instant motion Winegard had produced no responsive documents to King Controls' RFPs, and had not otherwise supplemented its responses. Now, after 120 days have elapsed since service of the

RFPs, and with less than 60 days remaining in fact discovery, Winegard has inappropriately and untimely requested a protective order. Given the short time of discovery left, and Winegard's dilatory behavior thus far, Winegard should now be given little latitude in withholding documents from King Controls. King Controls' requests that the Court compel full production of documents as requested by King Controls.

Respectfully Submitted,

**Skaar Ulbrich Macari, P.A.**

Dated: September 9, 2010   By:   /s/ Randall T. Skaar
Randall T. Skaar (Pro Hac Vice)
601 Carlson Parkway, Suite 1050
Minnetonka, MN 55305
Telephone: (612) 216-1700
Facsimile: (612) 234-4465
skaar@sumiplaw.com

J. Campbell Helton (AT 0003425)
**Whitfield & Eddy, PLC**
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
Phone:  (515) 288-6041
Facsimile: (515) 246-1474
Helton@whitfieldlaw.com

**ATTORNEYS FOR PLAINTIFF
ELECTRONIC CONTROLLED SYSTEMS, INC.
D/B/A KING CONTROLS**

CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2010 I electronically filed the foregoing Reply Brief with the Clerk of Court using the ECF system which automatically sent these documents to the following:

April A. Marshall
Charles E Miller
Thomas D Waterman
LANE & WATERMAN L.L.P.
220 North Main Street, Suite 600
Davenport, IA 52801

Michael D Beck
MAGINOT, MOORE & BECK LLP
111 Monument Circle, Suite 3250
Indianapolis, IN 46204

        SKAAR ULBRICH MACARI, P.A
        601 Carlson Parkway, Suite 1050
        Minneapolis, MN   55305
        Phone:(612) 216-1700
        Fax:   (612) 234-4465
        skaar@sumiplaw.com

        By:  /s/ Randall T. Skaar