UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| ELECTRONIC CONTROLLED SYSTEMS, INC., d/b/a KING CONTROLS, a Minnesota corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>WINEGARD COMPANY, an Iowa corporation,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **Consolidated No. 3:09-cv-138**<br><br>**WINEGARD COMPANY'S OPENING BRIEF FOR CLAIM CONSTRUCTION** |
| WINEGARD COMPANY,<br><br>    Plaintiff,<br><br>vs.<br><br>ELECTRONIC CONTROLLED SYSTEMS, INC. d/b/a KING CONTROLS,<br><br>    Defendant. | ) ) ) ) ) ) ) ) ) ) ) | |

Defendant Winegard Company ("Winegard") by and through its attorneys, Lane & Waterman LLP, states the following for its claim construction:

## TABLE OF CONTENTS

I.     BACKGROUND ................................................................................................ 3
II.    CLAIMS IN NEED OF CONSTRUCTION.................................................... 3
III.   LEGAL STANDARD FOR CLAIM CONSTRUCTION ............................... 3
IV.   CLAIM CONSTRUCTION FOR THE '573 PATENT .................................. 6
   A.  "ConFIGured to Enable" ......................................................................... 7
   B.  "ConFIGured to Enable ... Manual Transportability" .......................... 8

      1.  Prosecution Disclaimer Limits the Meaning of this Term. .............................................. 8

      2.  This Term is a Functional Limitation Not a Structural One. ........................................ 9

      3.  Conclusion.................................................................................................. 13

   C.  "ConFIGured to Selectively Adjust" ....................................................................... 13

   D.  "Connected to an Outer Surface" ........................................................................... 15

   E.  "Disposed on the Enclosure" ................................................................................. 16

   F.  "ConFIGured to Allow" ......................................................................................... 17

V.   CLAIM CONSTRUCTION FOR THE '764 PATENT ......................................................... 17

   A.  Common Terms ..................................................................................................... 18

   B.  "Selectively Rotate" ............................................................................................. 18

   C.  "When the Satellite Antenna System is Positioned in a First Orientation…" .................. 19

VI.   CONCLUSION.......................................................................................................... 21

## I.   BACKGROUND

Electronic Controlled Systems, Inc. d/b/a/ King Controls ("King Controls") has asserted infringement of two patents by Winegard:  U.S. Patent No. 7,595,764 (the '764 Patent) and U.S. Patent No. 7,679, 573 (the '573 Patent).  The patent document has a number of parts including a specification, drawings, and claims.  The specification is further composed of different parts including an abstract, background information, a summary of the invention, and a written description.

## II.   CLAIMS IN NEED OF CONSTRUCTION

Claims 1, 2, 3, and 8 of the '764 Patent are in need of construction.  Claims 1, 2, 12, 19, and 20 of the '573 Patent are in need of construction.

## III.   LEGAL STANDARD FOR CLAIM CONSTRUCTION

A patent is a government grant of the right to exclude others from making, using or selling the claimed invention.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995).  It is therefore essential that competitors "be able to ascertain to a reasonable degree the scope of the patentee's right to exclude." *Id.*  The Patent Laws provide that the patent specification[1] (the written description of the invention) "shall conclude with one or more claims <u>particularly</u> pointing out and <u>distinctly</u> claiming the subject matter which the applicant regards as his invention." 35 U.S.C. §112, ¶ 2.   The purpose of the "definiteness" requirement of Section 112 serves a valuable notice requirement, specifically to ensure that the claim language adequately notifies the public of the scope of the patentee's right to exclude.  *Young v. Lumenis*, 492 F.3d 1336, 1346

---

[1] The patents-in-suit are attached as Exhibit A.

(Fed. Cir. 2007).   The claims of the patent define "the metes and bounds of the patentee's invention." *Kara Tech. v. Stamps.com*, 582 F.3d 1341, 1348 (Fed. Cir. 2009).   Claims can be either independent or dependent.   An independent claim includes all of the recited elements in that claim and only that claim.   A dependent claim includes all of the elements recited in that claim as well as all of the elements of the claim(s) from which it depends.

The court has "the power and obligation to construe as a matter of law the meaning of language used in the patent claim." *Markman*, 52 F.3d at 979.   Claim construction is the task of "elaborating the normally terse claim language: in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991) (overruled on other grounds by *Abbott Labs v. Sandoz, Inc.*, 566 F.3d 1282 (Fed. Cir. 2009)).   In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) the Federal Circuit laid out the general rules of construction for claim language.   The words of a claim are generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art at the time of the invention. *Phillips*, 415 F.3d at 1312.   "Importantly, the person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification. *Id.* at 1313.   The Patent Laws require that the specification provide a written description of the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains … to make and use the same." 35 U.S.C. §112, ¶ 1.   If a claim is not amenable to construction or is "insolubly ambiguous" it is indefinite and fails to meet the statutory "definite" requirement. *See* 35

U.S.C. §112, ¶ 2; *Young*, 492 F.3d at 1346.  Thus, the written description part of the specification is a critical aid in ascertaining the scope and meaning of the claims.

In addition to the specification, the court should consider the prosecution history of the patent before the U.S. Patent Office ("PTO").  *Phillips*, 415 F.3d at 1317.  "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent.  *Id*.  Moreover, like the specification the prosecution history was created by the inventor to explain the invention.  *Id*.

Extrinsic evidence may assist in ascertaining the meaning of a claim term.  *Id.* Extrinsic evidence can include dictionaries and treatises in the art as well as expert testimony.  However, extrinsic evidence is less useful and generally considered to be less reliable than the intrinsic evidence of the four corners of the patent and its prosecution history.  *Id.* at 1318.  In some cases, reliance upon extrinsic evidence can yield an interpretation that is broader than is justified by the intrinsic evidence.  *Id.*

Concise claims utilize structural language to define structural elements of a claimed invention; however, some claims rely on functional language to define claimed elements.  Functional language in a claim element refers to what the element does rather than what it is.  The Patent Laws provide that an element in a claim "may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof."  35 U.S.C. §112, ¶ 6.  The statute further provides that this functional limitation "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  *Id.* The usual practice in claim drafting is to use the phrase "means for" when defining a claim element in terms of its function.  However, the Federal Circuit has recognized that

the "means for" language is not essential to reciting functional limitations and invoking the provisions of 35 U.S.C. §112, ¶ 6.

Where a claim term is defined in functional terms without the recitation of sufficiently definite structure, that term can be treated as a "means for" element under Section 112. *See*, *Welker Bearing Co. v. PHD, Inc.*, 550 F.3d 1090, 1096 (Fed. Cir. 2008) and cases cited therein. Treatment of a claim limitation as a "means for" element is appropriate where the claim provides no structural context for determining the characteristics of the claim element other than by describing its function. *Id.*

Construction of a functional limitation or "means for" element is a two-step process. First, the court determines the claimed function. *Applied Med. Research v. U.S. Surgical Corp.*, 448 F.3d 1324, 1332 (Fed. Cir. 2006). Second, the court must identify the corresponding structure in the written description that performs the claimed function. *Id.* As noted above, only the corresponding structure found in the specification, and equivalents thereof, are covered by the claim. The determination of an "equivalent" is not a way to broaden the claim, but instead "narrow[s] the application of broad literal claim elements." *Chiuminatta Concrete v. Cardinal Indus.*, 145 F.3d 1303, 1310 (Fed. Cir. 1998).

## IV.   CLAIM CONSTRUCTION FOR THE '573 PATENT

In the Joint Claim Construction Statement (Document 57), the parties identified several terms in both the '573 and the '764 Patents that are in dispute. Winegard alleges these terms are indefinite and challenges certain claims of both patents as being invalid under 35 U.S.C. §112, ¶ 2 for failing to provide adequate notice to the

public as to the scope of King Controls' claims.  Winegard's proposed construction of claim terms demonstrates that the claims are "insolubly ambiguous" and therefore invalid under 35 U.S.C. § 112[2].

A.   **"Configured to Enable"**

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| configured to enable | Arranged or set up to facilitate or allow. | The phrase is not in need of construction.  Under objection King Controls would offer "arranged or set up to facilitate" for 'configured to enable' |

This term appears in independent claims 1 and 19[3].  Winegard asserts that these claims are invalid because this claim limitation is indefinite under 35 U.S.C. §112, ¶ 2. The claims are indefinite because neither the claims nor the written description provide a sufficient explanation of what structure is required to be "configured to enable." Again, without waiving the challenge to the validity of claims 1 and 19, Winegard has agreed to accept the definition proposed by King Controls, namely that "configured to enable" means "**arranged or set up to facilitate or allow**."

---

[2]  Winegard also contends that the claims of both patents in suit are invalid in view of prior art and has requested re-examination of the patents by the U.S. Patent Office.  The re-examination has begun for both patents-in-suit with all targeted claims in both patents rejected by the Patent Office.

[3]  The disputed claim elements discussed herein that appear in claims 1 and 19 also appear in independent claim 10. King Controls has not alleged infringement of claim 10 or its dependent claims. However, if King Controls does intend to assert claim 10, the construction of this claim should be consistent with the construction of the identical terms in claims 1 and 19.

### B.   "Configured to Enable ... Manual Transportability"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| configured to enable…manual transportability | Having a handle. | The phrase is not in need of construction.  Under objection King Controls would offer "easily carried by hand" for 'manual transportability'. |

The parties dispute the meaning of the term "configured to enable ... manual transportability".  Winegard proposes that the term be construed to mean "**having a handle**".

### 1.   Prosecution Disclaimer Limits the Meaning of this Term.

Winegard's proposed meaning is supported by the specification and the prosecution history (the exchange between the patent applicant and the PTO).  More specifically, the meaning of this term is <u>limited</u> by the prosecution history of the '573 Patent.  Winegard has previously filed a Motion for Partial Summary Judgment for Non-Infringement of the '573 Patent (Document 55) in which Winegard explained that the doctrine of prosecution disclaimer limits the meaning of this language based on arguments presented by King Controls to the PTO in order to obtain the patent.  The full scope of Winegard's arguments and the application of prosecution disclaimer will not be repeated here.  In short, the doctrine of prosecution disclaimer holds that when a patentee makes "clear and unmistakable arguments" limiting a claim in order to overcome a rejection of the claim by the PTO, the patentee is not permitted to

"recapture through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003).   That is, King Controls cannot suggest an interpretation of the claim language that is counter to the arguments that it made to the PTO to get the patent granted.   As explained more fully in Winegard's Motion for Partial Summary Judgment, King Controls disclaimed a meaning of "configured to enable…manual transportability" that could encompass a device that can be manually lifted and installed on the roof of a vehicle. Moreover, as further explained in Winegard's prior motion, this prosecution disclaimer limits the meaning of the term "configured to enable … manual transportability" to a handle on the rigid enclosure.

### 2.    This Term is a Functional Limitation Not a Structural One.

Claims 1 and 19 define the "generally rigid enclosure" using functional language instead of structural language.   That is, the claims do not provide any "structural context for determining the characteristics" of the limitation "a generally rigid enclosure…configured to enable … manual transportability." *See, Welker,* 550 F.3d at 1096.   The claims do not identify any structural feature that renders the rigid enclosure "configured to enable … manual transportability."   Since King Controls chose to define this aspect of the rigid enclosure using functional language instead of structural language, this language must be interpreted in accordance with 35 U.S.C. §112, ¶ 6.

The first step in construing the functional limitation in claims 1 and 19 is to ascertain the function.   This analysis is difficult however, because the functional language "manual transportability" is vague.   Most things can be manually carried or transported by hand, provided the object is not too heavy for the particular person to lift.

Some things can be manually carried for long distances, such as a watch, while other objects can be manually carried for only a few feet, such as a 100 pound dumbbell. Unfortunately, the specification of the '573 Patent does not offer any precise explanation as to the parameters of "manual transportability."  The terms "transport", "transportable" and "transportability" appear in several locations in the '573 Patent (Abstract, l. 3; col. 1, ll. 15, 50, 53-56, 61, 64; col. 3, ll. 64; col. 5, ll. 51 , 53; col. 8, l. 28), but no specific definition is provided.  Winegard believes that this indefiniteness is fatal to claims 1 and 19 under 35 U.S.C. §112.  Nevertheless, for the purposes of the present claim construction the function can be identified as "being carried by hand."

The next step in construing a functional limitation in a claim is to determine what structure is identified in the written description as performing the ascertained function, in this case, the function of "being carried by hand."  As discussed above, the doctrine of prosecution disclaimer prevents King Controls from attempting to recapture through claim interpretation a meaning for this term that was unequivocally disclaimed during prosecution in order to overcome a rejection by the PTO.  In particular, King Controls disclaimed structure found in its own prior art King Dome product that allowed a person to manually carry the product so that it could be mounted on a vehicle.  The King Dome product, as represented by the King Controls' Patent No. 6,865,846 (the '846 Patent) cited by the Patent Examiner, could be manually lifted and carried to a vehicle and placed on the roof of that vehicle.  *See*, Winegard Motion for Partial Summary Judgment, SOMF Nos. 12-15. However, the King Dome product and the device disclosed in the prior art '846 Patent did not include a handle.  King Controls argued that the claim language "configured to enable ... manual transportability" did not encompass

the handle-less device in the prior art '846 Patent.  *See*, Winegard Motion for Partial Summary Judgment, SOMF Nos. 8, 11.  King Controls thus disclaimed any definition of the "configured to enable...manual transportability" language that does not require a handle.

King Controls' prosecution disclaimer is further supported by the specification of the '573 Patent.  For example, in discussing the prior art, King Controls described products that were "awkward to transport from place to place."  Col. 1, ll. 34-50.  King Controls then described prior art devices that "are equipped with handles to allow the systems to be carried to new locations."  Col. 1, ll. 51-52.

King Controls suggested that the difficulty with the prior systems having handles was that they took time to set up for use.  Col. 1, ll. 52-56.  King Controls focused on the system described in the '573 Patent as an advantage in view of this difficulty.  In particular, King Controls explained that, "An advantage of embodiments of the mobile satellite antenna system of the present invention is that no setup is needed to use the system after it is transported."  Col. 5, ll. 49-51. In other words, King Controls did not distinguish the "manual transportability" in the '573 Patent from the "manual transportability" of the prior art, or otherwise suggest that this "manual transportability" did not require a handle as in the acknowledged prior art.

In describing one embodiment, King Controls states that, "A handle 126 can be affixed to cover 102 and/or base 104 for easy transportation of enclosure 101."  Col. 3, ll. 63-65.  King further explains that, "A non-permanently attached enclosed mobile satellite antenna system can also be made portable so that it can be used away from the vehicle.  As shown in FIGS. 1-4, a dielectric handle 126 can be attached to the

11

enclosure 101 of the system 100." Col. 5, ll. 30-34.  Moreover, in describing the system

for adjusting the position of the satellite dish, King states that in certain embodiments,

"azimuth can be given relative to the enclosure, the handle, or the coaxial connector."

Col. 6, l. 61-63(emphasis added).  Like the enclosure itself, King Controls regarded the

handle as an essential element of the antenna system.  In describing the embodiment

depicted in FIG. 13, King Controls explains that, "Enclosure 301 can optionally be

provided with a handle to provide for easily [sic] transportability and manual carrying of

enclosed mobile satellite antenna system 300." Col. 8, ll. 27-30.  This further illustrates

that for King Controls, the distinction between a transportable device and a device that

could not be easily transported was the presence of a handle.

 The only structure specifically identified in the '573 Patent as providing a manual

transportability feature for the disclosed antenna system is a handle affixed to the

enclosure.  Plaintiff disclaimed a light weight and small profile from this definition during

the prosecution of the '573 Patent.  *See*, Winegard Motion for Partial Summary

Judgment. Moreover, while King Controls explains that the weight of the device and the

location of the handle can be adjusted to make the antenna system easier to carry, the

discussion always includes a handle.  *See*, Col. 5, l. 35-48.

 The '573 Patent includes dependent claims that refer to a handle.  Under the

doctrine of claim differentiation[4] one could argue that the scope of claims 1 and 19

therefore does not include a handle.  However, those claims do not recite simply a

handle.  For instance, claim 2 further limits the handle to being "connected to an outer

surface of the enclosure." Dependent claims 12 and 20 further limit the handle to "allow

---

[4] The doctrine of claim differentiation states that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Phillips*, 415 F.3d at 1315.

manual carrying of the satellite antenna system with one hand."  Therefore, the reference to a handle in the dependent claims does not alter the proposed interpretation of the element "configured to enable ... manual transportability" in claims 1 and 19 even under the doctrine of claim differentiation.

### 3.    Conclusion

Winegard proposes that the term "configured to enable ... manual transportability" be interpreted to mean "**having a handle**".

### C.    "Configured to Selectively Adjust"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| configured to selectively adjust | Incremental and interactive adjustment. | The phrase is not in need of construction.  Under objection King Controls would offer:  "in a non-random manner" for 'selectively'. |

The limitation "configured to selectively adjust" also appears in both independent claims 1 and 19 (as well as independent claim 10).  Winegard asserts that this limitation is indefinite under 35 U.S.C. §112, ¶ 2, rendering these claims invalid, because there is insufficient recitation in either the claims or the written description of what structure is required to make the device "configured to selectively adjust."  Again, without waiving the challenge to the validity of claims 1 and 19, Winegard proposes that this language be interpreted to mean "incremental and interactive adjustment."

The specification does not provide any definition for the term "selectively adjust" or how the motorized drive system is "configured to selectively adjust" a position of the

antenna.  The term is found only in the "Summary of the Invention", which is essentially a copy of the independent claims.  *See*, col. 2, ll. 7-10; 24-27.

The term "configured to selectively adjust" describes the "motorized drive system" element in claims 1 and 19.  The claims do not identify any other structure or provide any structural context for determining what characteristics of the motorized drive system allows it to "selectively adjust."  *See*, *Welker*, 550 F.3d at 1096.  Rather than provide structural details, King Controls chose to express the motorized drive system element in functional terms.  This limitation should thus be construed according to 35 U.S.C. §112, ¶ 6 as described above.

The first step is to identify the function.  While the recited function is "to selectively adjust", the specification does not provide any clear explanation as to what this function actually entails.  For that matter, the motorized drive system itself is not clearly and precisely described.  The only reference to a motorized drive system in the "Detailed Description" of the specification is the statement that, "positioning of dish 130 is carried out by a motorized elevation drive system and a motorized azimuth drive system that are controlled by a control system."  Two motors 144 and 150 are described (see, col. 6, ll. 16-17, 31-33), but their relationship to the claimed "motorized drive system" is not explained.  Nor is there any explanation as to whether or how these motors 144 and 150 are used to "selectively adjust a position of the antenna."

The only guidance as to the meaning of this term is found in the description of the manner in which the satellite dish is repositioned to acquire a satellite signal.  *See*, col. 6, l. 40 – col. 7, l. 11  In particular, this excerpt of the '573 Patent explains that up and down buttons are first used to move the dish to an elevation displayed on a screen.

Left and right buttons are then used to rotate the dish until a satellite signal is observed on the screen.  Finally, all four arrows are used to fine tune the position of the dish to maximize the signal acquisition.  All of these steps define the function recited in claims 1 and 19, namely to "selectively adjust a position of the antenna."   All of these steps describe an incremental and interactive adjustment of the dish position that is accomplished using four positioning arrows on a "remote".  See also, col. 6, ll. 40-43.  No other technique or structure is disclosed in the '573 Patent that can perform the function recited in claims 1 and 19 to "selectively adjust a position of the antenna."

King Controls chose the language that it used in the claims to define the invention.  Had King Controls intended a broader scope for the motorized drive system element it could have used broader terms or recited sufficiently definite structure to clearly define the invention.  For instance, the motorized drive system could have been defined in the claims as "configured to move the antenna."  For that matter, the element could have been simply recited as "a motor configured to move the antenna."  King Controls chose the limitations "selectively" and "adjust" to define the structure of a "motorized drive system" element.

In view of the specification of the '573 Patent, Winegard proposes that the term "selectively adjust" be interpreted to mean "**incremental and interactive adjustment**".  The only structure identified in the specification of the '573 Patent that performs this function requires four directional arrows on a remote.

### D.    "Connected to an Outer Surface"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
| --- | --- | --- |

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| connected to an outer surface | Attached to an outer surface. | The phrase is not in need of construction.  Under objection King Controls would offer: "attached" for 'connected'. |

Winegard agreed to accept King Controls' proposed construction of this term in dependent claim 2 to mean "**attached to an outer surface**" of the enclosure.

### E.    "Disposed on the Enclosure"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| disposed on the enclosure | Attached to an outer surface. | This phrase is not in need of construction.  Under objection, King Controls would offer: "to put in a particular or suitable place on the enclosure" for 'disposed on the enclosure'. |

This element is recited in dependent claims 12 and 20 to further define the handle.  Winegard believes that the definition proposed by King Controls for the language in claim 2 (attached to an outer surface) is acceptable for the "disposed on the enclosure" language found in claims 12 and 20.  The only recitation in the '573 Patent for the manner in which the handle is associated with the enclosure is with the handle being attached to an outer surface of the enclosure.  *See*, FIG. 2.  The specification states that "a dielectric handle 126 can be <u>attached</u> to the enclosure 101" (col. 5, ll. 32-33), and that a handle "can be <u>affixed</u> to cover 102 and/or base 104" (col. 3, 63-65).  The only discussion in the '573 Patent is of a separate handle that is either attached to or affixed to the enclosure in some manner.  Thus, Winegard proposes that the term

"disposed on the enclosure" in claims 12 and 20 be construed to mean "**attached to an outer surface**" of the enclosure.

### F.     "Configured to Allow"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| configured to allow | Arranged or set up to enable. | The phrase is not in need of construction.  Under objection King Controls would offer: "arranged or set up to enable" for 'configured to allow'. |

Winegard agreed to accept King Control's proposed construction for this term of claims 12 and 20 to mean "**arranged or set up to enable**."

## V.     CLAIM CONSTRUCTION FOR THE '764 PATENT

The '764 Patent was filed concurrently with the '573 Patent and includes the same figures and written description, with a few differences that are not related to the elements recited in the claims.  Moreover, the language of the claims is substantially identical between the two patents as is the claimed subject matter.  In fact, the '573 Patent is subject to a terminal disclaimer because the Patent Examiner regarded the claims to cover the same subject matter <u>as in the '764 Patent</u>. [5]  Consequently, like terms should be construed consistently between the two patents.

It is further noted that the claims of the '764 Patent suffer from the same afflictions as the '573 Patent.  Winegard thus challenges certain claims of the '764

---

[5] A terminal disclaimer is required in a case where more than one patent has been obtained by the inventor on the same invention. The disclaimer requires that the later patent expire at the same time as the former patent and the later patent will be enforceable only as long as both the patents are commonly owned.  Manual of Patent Examining Procedure § 804.02.

Patent as being invalid for indefiniteness under 35 U.S.C. §112, ¶ 2 for failing to provide adequate notice to the public as to the scope of the patent.

### A.     Common Terms

In the '764 Patent, the following disputed terms are the same as disputed terms in the '573 Patent: in claim 1, "configured to enable", "manual transportability", and "selectively adjust"; in claim 2, "connected to an outer surface"; and claim 8, "configured to allow".  Each of these disputed terms should be construed to have the same meaning as the identical terms in the '573 Patent because the written description underlying these terms is the same between the two patents.

Thus, Winegard proposes the following construction for these disputed terms:

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| configured to enable | Arranged or set up to facilitate or allow |
| manual transportability | Having a handle |
| selectively adjust | Incremental and interactive adjustment |
| connected to an outer surface | Attached to an outer surface |
| configured to allow | Arranged or set up to enable |

### B.     "Selectively Rotate"

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| selectively rotate | Interactive and incremental rotation. | The phrase is not in need of construction.  Under objection King Controls would offer:  "in a non-random manner" for 'selectively' |

Claim 1 of the '764 Patent includes the additional disputed term "selectively rotate" in defining the "motorized azimuth drive system."  This limitation is essentially the same as the limitation "selectively adjust" and should be construed in the same manner as "selectively adjust".  The '764 Patent does not include any specific description of any selective adjustment or selective rotation and the only guidance is provided in the "Detailed Description" at col. 7, ll. 16-27 (which is identical to col. 7, ll. 1-11 of the '573 Patent).

Thus, Winegard proposes that the term "selectively rotate" be construed to mean "**interactive and incremental rotation**".

C.    **"When the Satellite Antenna System is Positioned in a First Orientation…"**[6]

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
| When the satellite antenna system is positioned in a first orientation… | about 60 degrees relative to the horizontal. | these phrases are not in need of construction. Under further objection, King Controls would offer the following clarification if deemed necessary: The 'first orientation' is the |

---

[6]  The language in claim 3 that is in dispute includes "when the satellite antenna system is positioned in a **first orientation** for automated operation and wherein **the handle is positioned such that the base is oriented at an angle to ground** when the satellite antenna system is positioned in a **second position** for manually [sic] transportability."

| Claim Term | Winegard Company's Proposed Construction | King Controls' Proposed Construction |
|---|---|---|
|  |  | orientation of the antenna system to the ground when the system is in operation. |

Dependent claim 3 purports to further define the enclosure recited in claim 1 as having a generally planar base "defining a bottom of the enclosure when the satellite antenna system is positioned in a first orientation." The claim further includes the language "wherein the handle is positioned such that the base is oriented at an angle to ground … in a second position." This claim is vague and indefinite since it does not inform the public as to what structure accomplishes the "first orientation" and "second position" and fails to inform the public as to what "angle to ground" falls within the scope of the claim. Winegard thus challenges the validity of claim 3 under 35 U.S.C. §112, ¶ 2 for failing to particularly point out and distinctly claim the subject matter of King Controls' patent.

The specification of the '764 Patent provides no guidance regarding the meaning of "first orientation", "second position" or "angle to ground." The terms "first orientation" and "second position" are not used anywhere in the specification. With respect to the term "angle to ground", the specification simply states that, "The handle 126 can be positioned such that when system 100 is carried by handle 126, bottom surface 110 is oriented at an angle to the ground." Col. 5, ll. 42-44. The specification does not provide any insight into the magnitude of that angle or whether that angle is any different between the "first orientation" and the "second position". The angle of the base to

ground could be one degree (nearly flat on the ground) or ninety degrees (perpendicular to the ground), which renders this limitation meaningless.

This vagueness renders the claim "insolubly ambiguous". To the extent that any meaning can be ascribed to this language in claim 3, the only resource is the figures of the patent. As best understood, FIG. 3 of the '764 Patent depicts an antenna system in the "first orientation" with the planar base defining the bottom and the system ready for "automated operation". FIG. 2 shows the system with the handle 126 situated as it might be oriented when manually carried. As best understood, this figure depicts the satellite antenna system in the "second position" with the bottom surface 110 that is neither parallel (zero degrees) nor perpendicular (ninety degrees) to the ground. Comparing the orientation of the system between FIG. 2 and FIG. 3, it appears that the "angle to ground" is about 60 degrees. This is speculation however, as King Controls provided no guidance in the '764 Patent as to the scope of claim 3 or the range of angles falling within the claimed "angle to ground."

Winegard thus proposes that language "angle to ground" be construed to mean **"about sixty (60) degrees relative to the horizontal"**.


## VI.   CONCLUSION

Without waiving the challenges to the validity of the claims for indefiniteness, Winegard moves this Court to adopt the following construction for the disputed claims of the '573 and '764 Patents.

**The '573 Patent**

Claims 1, 10 and 19

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| configured to enable | Arranged or set up to facilitate or allow. |
| manual transportability | Having a handle. |
| selectively adjust | Incremental and interactive adjustment. |

Claim 2

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| connected to an outer surface | Attached to an outer surface. |

Claims 12 and 20

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| disposed on the enclosure | Attached to an outer surface. |
| configured to allow | Arranged or set up to enable. |

**The '764 Patent**

Claim 1

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| configured to enable | Arranged or set up to facilitate or allow. |
| manual transportability | Having a handle. |

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| selectively adjust | Incremental and interactive adjustment. |

Claim 2

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| connected to an outer surface | Attached to an outer surface. |

Claim 3

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| angle to ground | About sixty (60) degrees relative to the horizontal. |

Claim 8

| Claim Term | Winegard Company's Proposed Construction |
|---|---|
| configured to allow | Arranged or set up to enable. |

MAGINOT, MOORE & BECK LLP
Michael D. Beck
111 Monument Circle, Suite 3250
Indianapolis, IN 46204
Phone: (317) 638-2922
Fax:  (317) 638-2139
Email:  mdbeck@maginot.com

LANE & WATERMAN LLP

By      /s/ April A. Marshall
    Charles E. Miller (AT0005409)
    Thomas D. Waterman (AT0008341)
    April A. Marshall (AT0009604)
220 North Main Street, Suite 600
Davenport, IA  52801
Phone:  (563) 324-3246
Fax:  (563) 324-1616
Email:  cmiller@l-wlaw.com
Email:  twaterman@l-wlaw.com
Email:  amarshall@l-wlaw.com

**ATTORNEYS FOR WINEGARD COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this _25th_ day of October, 2010, I forwarded the foregoing Winegard Company's Opening Brief for Claim Construction to each of the attorneys of record herein, at their respective addresses disclosed on the pleadings, electronically and by regular mail.

> Randall T. Skaar (Pro Hac Vice)
> Scott G. Ulbrich (Pro Hac Vice)
> Skaar Ulbrich Macari, P.A
> 601 Carlson Parkway, Suite 1050
> Minneapolis, MN  55305
> Phone:  (612) 216-1700
> Fax:  (612) 234-4465
> skaar@sumiplaw.com
>
> J. Campbell Helton (AT 0003425)
> Whitfield & Eddy, PLC
> 317 Sixth Avenue, Suite 1200
> Des Moines, IA  50309-4195
> Phone:  (515) 288-6041
> Facsimile: (515) 246-1474
> Helton@whitfieldlaw.com

_/s/_   April A. Marshall