UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| ELECTRONIC CONTROLLED SYSTEMS, INC., d/b/a KING CONTROLS, a Minnesota corporation, | ) ) ) ) | |
| Plaintiff, | ) ) | Consolidated No. 3:09-cv-138 |
| vs. | ) ) ) | |
| WINEGARD COMPANY, an Iowa corporation, | ) ) ) | **REPLY TO KING CONTROLS' OPENING CLAIM CONSTRUCTION BRIEF** |
| Defendant. | ) ) ) ) | |

---

| | |
|---|---|
| WINEGARD COMPANY, | ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| ELECTRONIC CONTROLLED SYSTEMS, INC. d/b/a KING CONTROLS, | ) ) ) |
| Defendant. | ) ) |


# TABLE OF CONTENTS

I.   STIPULATED CLAIM CONSTRUCTION ...................................................................2

II.  CLAIM CONSTRUCTION LAW .........................................................................2

     A.  "Configured to Enable … Manual Transportability"...............................3

     B.  "Selectively Adjust" and "Selectively Rotate".......................................7

C.  "Connected to an Outer Surface" ...................................................................9

D.  Claim 3 .........................................................................................................9

E.  "Configured to Allow"...................................................................................10

F.  "Disposed on the Enclosure" ......................................................................11

I.      **STIPULATED CLAIM CONSTRUCTION**

   The parties have stipulated to the construction of the term "comprised of" as meaning "including but not limited to" for the patents-in-suit.  This term first appears in claim 1, "the cover <u>comprised of</u> an electromagnetic wave permeable material."  Claims are typically composed of three parts: a preamble, a transitional phrase, and a body.  In this instance, the parties are stipulating to the meaning of a transitional phrase.[1] Because King Controls deviated from using a standard transitional phrase in its claims by combining parts of open and closed transitional phrases, the meaning had to be discerned, namely whether it was open or closed.  King Controls cited case law on point and Winegard agrees the case is persuasive.  Importantly, the construction of the transitional phrase does not impact the construction of other terms in the claims.

II.     **CLAIM CONSTRUCTION LAW**

   King Controls argues that none of the terms in the patent claims require construction because a person of ordinary skill in the art[2] would understand the claim

---

[1] Most commonly, "comprising" is used as the transitional phrase because it is an "open" transitional phrase.  An open transitional phrase means that the claim must include all of the elements contained in the body of the claim, but can also include other elements not recited in the body of the claim. Alternatively, there are "closed" transitional phrases such as "consisting of."  A closed transitional phrase means that the patent covers the elements in the body of the claim and only those elements.

[2] A person of ordinary skill in the art at the time of the invention is the baseline from which to begin claim interpretation.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005)(en banc).

terms in their ordinary sense.  While the "ordinary meaning" of claim terms is the

starting point of any claim construction, it is not always the ending point.  In particular, "a

claim term will not carry its ordinary meaning if the intrinsic evidence shows that the

patentee distinguished that term from prior art on the basis of a particular embodiment,

expressly disclaimed subject matter, or described a particular embodiment as important

to the invention."  *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366-1367

(Fed. Cir. 2002).  Moreover, a claim term also will not have its ordinary meaning if the

term "chosen by the patentee so deprive[s] the claim of clarity" as to require resort to

the other intrinsic evidence for a definite meaning."  *Id.* at 1367 (quoting *Johnson

Worldwide Assocs, Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed. Cir. 1999)).

   In this case, both circumstances are present and thus a departure from the

"ordinary meaning" analysis is warranted.  First, the contested claim terms chosen by

King Controls are so unclear that a competitor cannot determine what King Controls is

attempting to claim and therefore exclude from the public domain[3].  Second, King

Controls specifically disclaimed subject matter during the prosecution of its '573 Patent

when it distinguished the claims of the '573 Patent from its own King Dome product[4].

## A.    "Configured to Enable … Manual Transportability"[5]

   King Controls argues that because it chose the terms "configured to enable …

manual transportability" the terms should not be subject to construction by this Court.

However, this language does not "particularly point out and distinctly claim" what King

Controls seeks to exclude from the public domain with this patent.  *See*, 35 U.S.C. 112,

---

[3]  A grant of a patent is a negative right, that is, it is the right to exclude others from making, using, selling, or offering for sale the claimed invention.
[4]  This argument is more fully discussed in Winegard's Motion for Partial Summary Judgment Dkt # 55 and Winegard's Opening Brief for Claim Construction Dkt# 80.
[5]  This claim language is found in claims 1 and 19 of the '573 Patent and claim 1 of the '764 Patent.

3

¶2.  While each individual word may have a "plain meaning", there is no "plain meaning" to the phrase "configured to enable … manual transportability", and it is this phrase that is used to define the claim element and therefore define the metes and bounds of the claimed invention.

King Controls suggests that the doctrine of claim differentiation militates against construing this element to mean "having a handle."  King Controls' states in its Opening Brief (Dkt #81), "dependent claims are presumed to be of narrower scope than the independent claims from which they depend."  That is, if the dependent claim recites a limitation and that limitation is the only "meaningful difference" between the independent claim and the dependent claim, then that limitation cannot be read into the independent claim during construction.  *RF Delaware v. Pacific Keystone Techs.,* 326 F.3d 1255, 1263 (Fed. Cir. 2003)  However, Winegard contends that the recitation of a handle in claim 2 (the dependent claim) is not the only "meaningful difference" between claim 1 (the independent claim) and claim 2.  To the contrary, the most meaningful difference is the more specific limitation set forth in claim 2 that the "handle is connected to an outer surface of the enclosure."  King Controls did not write claim 2 to only recite a handle, but also chose to include specific limitations regarding position and connection of the handle.  It can further be noted that claims 8 and 13 of the '764 Patent also refer to the handle, but as with claim 2, King Controls chose to introduce further structural limitations.[6]  In claim 8, which depends from claim 2, the handle is further defined as configured to allow carrying "with one hand."  In claim 13 (which depends indirectly from

---

[6]   King Controls only specifically refers to the '764 Patent for its claim differentiation arguments.  However, claim 2 of the '573 Patent includes the same language as claim 2 of the '764 Patent.  Likewise, dependent claims 12 and 20 of the '573 Patent have the same limitations as dependent claim 8 of the '764 Patent.

claim 1), the handle is defined as connected to a corner facet of the cover.  In each of these dependent claims, including claim 2, the additional structural limitations chosen by King Controls to further limit the handle provide the "meaningful difference."  Winegard is not suggesting an interpretation of claim 1 that incorporates these other specific structural limitations, so claim differentiation does not interfere with Winegard's proposed claim construction of "configured to enable...manual portability" as meaning a handle.

   King Controls also suggests that one sentence of the written description of the specification supports a broader construction for the term "configured to enable ... manual transportability."  The sentence states that "various other dielectric features could be used to provide portability."  However, this sentence, like the claim language, is of no help in discerning what structure the claim language is intended to cover.  The immediately preceding sentence referring to a dielectric carrying case provides the only possible guidance.  Col. 5, ll. 48-49.  This sentence appears to be a reference to the background of the patent that describes the prior art systems equipped with handles that fold into a suitcase-like configuration.  *See,* Col. 1, ll. 51-56.  Again, even in this alternative embodiment the satellite antenna system is carried by a handle.

   In its brief, King Controls suggests certain design modifications that "might also fall under the scope" of the claims.  However, the time for suggesting these designs was when the patents were written or prosecuted before the U.S. Patent Office ("PTO").  It is too late now.  Once the patents issued, the die was cast as to how the claims had to be interpreted and as to the scope of those claims.  The Patent Laws require that the "specification of a patent shall contain a written description of the invention... in such

full, clear, concise, and exact terms as to enable any person skilled in the art... to make and use the same." 35 U.S.C. 112, ¶1 (emphasis added). King Controls cannot now suggest a new description of the invention to augment the specification of a patent that has already issued.

Moreover, the application of the claim differentiation doctrine can be overcome by a contrary claim construction dictated by the specification. *See, Regents of Univ. of California v. Dakocytomation California, Inc.,* 517 F.3d 1364, 1375 (Fed Cir. 2008). As Winegard explains in more detail in its Opening Claim Construction Brief, the limitation of claim 1 "configured to enable ... manual transportability" is a functional limitation, not a structural one. Consequently, this limitation must be construed according to 35 U.S.C. 112, ¶6. This approach requires looking to the specification to find the structure that performs the function of enabling manual transportability. Winegard's proposed claim construction is consistent with this approach. King Controls has not undertaken a similar analysis to identify any structure other than a handle that accomplishes the functional limitation of claim 1.

The application of claim differentiation can also be overcome by a contrary claim construction dictated by the prosecution history. *Regents of Univ. of California,* 517 F.3d at 1375. As Winegard explained in its Opening Claim Construction Brief and in its Motion for Partial Summary Judgment, King Controls unequivocally disclaimed a meaning for the term "configured for ... manual transportability" that <u>did not</u> require a handle. With respect to the '573 Patent, King Controls relied upon an interpretation of this phrase that did not cover its own prior art King Dome product – a product that can be manually carried but does not include a handle. Notably, in arguing for the

patentability of the claims of the '573 Patent, King Controls did not identify the design alternatives that King Controls now suggests in its Claim Construction Brief.  King Controls cannot rely upon one interpretation of "configured for ... manual transportability" in order to get its patents granted and then ask this Court to adopt a broader construction that would be anticipated by its own prior art King Dome product. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

The construction proposed by Winegard – namely that the term "configured to enable ... manual transportability" means "having a handle" – is supported by the specification of both patents and by King Controls' own arguments for patentability before the PTO.

With respect to the claims of the '573 Patent, King Controls relies upon its discussion of the '764 Patent.  Thus, according to King Controls, identical language in the two patents, including the "configured for ... manual transportability", should be construed the same way.  Winegard agrees.

B.   **"Selectively Adjust" and "Selectively Rotate"**[7]

King Controls again suggests that these terms do not require construction and that the terms are used in a "normal way."  King Controls does admit that the term "selectively" implies some interaction, but does not explain what is being selected or the available choices for that selection.  King Controls suggests that the recited "control system" provides this interaction.  However, the language of the claims does not support the construction offered by King Controls nor does it clear up any confusion as to meaning.  The problem with King Controls proposed construction is that the control

---

[7] This language appears in claim 1 of the '764 Patent and claims 1, 10, and 19 of the '573 Patent (though claim 10 has not been asserted against Winegard).

system, according to the claims, provides "automated operation of the satellite antenna system." There is no recitation of "selective adjustment" or "selective rotation" in the definition of the control system. The "selectively adjust" and "selectively rotate" language is used in the claims to describe the function of the <u>drive system</u>. The "automated operation" language used to define the control system is applied to the satellite system as a whole, not just to the drive systems.

King Controls' efforts to explain the terms "selectively adjust" and "selectively rotate" underscore the vagueness and indefiniteness of the claims. Although the starting point for claim construction is to look to the ordinary meaning of the claim terms, this exercise does not provide any clarity to the patent claims at issue here. Looking only at the ordinary meaning of the individual words does not explain what King Controls seeks to exclude from the public under the claim language "configured to selectively adjust" or "configured to selectively rotate".

As Winegard has explained in its Opening Claim Construction Brief, these limitations are in functional terms instead of structural terms so the limitations must be construed according to 35 U.S.C. 112, ¶6. This approach requires looking to the specification to find the structure that performs the functions of "selective adjustment" and "selective rotation". As explained more fully in Winegard's Opening Claim Construction Brief, the specification discloses an "interactive and incremental[8] adjustment/rotation" accomplished via the arrow keys on a remote control.

---

[8] King Controls attempts to denigrate Winegard's use of the term "incremental" by selecting an alternative definition for the term that is clearly inappropriate for this technology. The common definition for the word "increment" is "something added or gained", or "one of a series of regular additions." See, Webster's Unabridged Dictionary. The common meaning of the word "increment" is appropriate for the antenna system disclosed in the patents-in-suit.

### C.    "Connected to an Outer Surface"[9]

King Controls argues that Winegard's suggested proposed construction "attached" is synonymous with "connected to".   Winegard accepts this argument.

### D.    Claim 3

King Controls charges that Winegard "feigns confusion" about the language of claim 3 of the '764 Patent, pointing to arguments made to the PTO in connection with the re-examination proceedings for this patent.   However, while claims must be interpreted consistently in litigation for both validity and infringement purposes, claim interpretation before the PTO is treated differently.   In the PTO, the rule is that claims must be given their "broadest reasonable interpretation consistent with the specification."   *See*, Manual of Patent Examination Procedure (MPEP), § 2111[10].   In litigation, the court considers the public record, which includes the patent and the prosecution history developed before the PTO, and applies established rules of construction of legal documents to the language of the patent claim.   *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-980 (Fed. Cir. 1995).   The rationale behind the different standards[11] in the PTO and federal courts is that the "[a]pplicant always has the opportunity to amend the claims during prosecution, and broad interpretation by the examiner reduces the possibility that the claim, once issued, will be interpreted more broadly than justified."   MPEP §2111.

Winegard's submission to the PTO to secure re-examination of the two patents-in-suit followed the requirements of the PTO and construed the claims in a manner

---

[9] This language appears in claim 2 of the '573 Patent and claim 2 of the '764 Patent.

[10] The MPEP is available online at http://www.uspto.gov/web/offices/pac/mpep/mpep.htm.

[11] Even though there are different standards, if a patentee disclaims a meaning during prosecution, it is binding during litigation because the prosecution history is part of the intrinsic evidence considered by the court.   *Omega Eng'g v. Raytek Corp.*, 334 F. 3d 1314 (Fed. Cir. 2003)

consistent with the PTO practice. King Controls has the opportunity to submit an amendment to the PTO to narrow the claims in response to the Patent Examiner's rejection of the challenged claims of the two patents. So far, King Controls has not responded to the rejection of the claims of the '764 Patent or more specifically to the rejection of claim 3 as unpatentable. Thus, this Court does not have the benefit of learning how King Controls may choose to construe the language of claim 3 to preserve its validity.

In the present litigation, validity arguments have not been made but Winegard has provided King Controls with the re-examination submissions because they set forth prior art that invalidates King Controls' patents. When validity is argued to this court, King Controls can argue for the broad interpretation of the language of claim 3 that was rejected as unpatentable by the Patent Examiner in the re-examination.

King Controls offers no explanation as to the meaning of the challenged terms in claim 3. As Winegard has explained in its Opening Claim Construction Brief, the language of claim 3 is vague and does not provide the public with any understanding of the scope of what King Controls is seeking to exclude from the public domain with this claim. While Winegard believes that this indefiniteness is fatal to the validity of this claim, if there is to be any construction of claim 3 it should be consistent with the specification and drawings of the '764 Patent. Winegard's proposed construction is consistent with the patent and at least provides some foundation to inform the public about what this claim covers.

     E.     **"Configured to Allow"**

Winegard's position regarding this term is fully presented in its own Opening Claim Construction Brief.

### F.    "Disposed on the Enclosure"

Claim 20 of the '573 Patent uses the term "disposed on the enclosure" in identifying specific structure of the handle of the antenna system.  King Controls again suggests that the ordinary meaning of this term should suffice.  According to King Controls this ordinary meaning is "to place or set" or "to put in a suitable location or place."  A handle that is simply placed, set or put on an enclosure cannot be used to lift the enclosure any more than a book placed set or put on a table can be used to lift the table.  Obviously a handle that has no form of attachment to the enclosure will fail in its essential function to enable manual transportability.  King Controls has again demonstrated that the ordinary meaning of terms King Controls chose for the patent claims are insufficient to define the invention and to inform the public of the reach of the patent claims.  Thus, Winegard's construction of the phrase "disposed on the enclosure" to mean attached, is supported by the specification.

MAGINOT, MOORE & BECK LLP
Michael D. Beck
111 Monument Circle, Suite 3250
Indianapolis, IN 46204
Phone: (317) 638-2922
Fax:  (317) 638-2139
Email:  mdbeck@maginot.com

LANE & WATERMAN LLP


By    _/s/ April A. Marshall_____
    Charles E. Miller (AT0005409)
    Thomas D. Waterman (AT0008341)
    April A. Marshall (AT0009604)
220 North Main Street, Suite 600
Davenport, IA  52801
Phone:  (563) 324-3246
Fax:  (563) 324-1616
Email:  cmiller@l-wlaw.com
Email:  twaterman@l-wlaw.com
Email:  amarshall@l-wlaw.com


**ATTORNEYS FOR WINEGARD COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2010, I forwarded the foregoing **Reply to King Controls' Opening Claim Construction Brief** to each of the attorneys of record herein, at their respective addresses disclosed on the pleadings, electronically and by regular mail.

> Randall T. Skaar (Pro Hac Vice)
> Scott G. Ulbrich (Pro Hac Vice)
> Skaar Ulbrich Macari, P.A
> 601 Carlson Parkway, Suite 1050
> Minneapolis, MN  55305
> Phone:  (612) 216-1700
> Fax:  (612) 234-4465
> skaar@sumiplaw.com
>
> J. Campbell Helton (AT 0003425)
> Whitfield & Eddy, PLC
> 317 Sixth Avenue, Suite 1200
> Des Moines, IA  50309-4195
> Phone:  (515) 288-6041
> Facsimile: (515) 246-1474
> Helton@whitfieldlaw.com

                                    /s/ April A. Marshall